**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lindy D. COSGROVE, Defendant and Appellant.**

**No. 16294.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 1989.

Decided May 3, 1989.

Diane M. Patrick, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Max A. Gors of Gors, Braun and Zastrow, Pierre, for defendant and appellant.

MILLER, Justice.

In this opinion, we hold that the statute requiring a driver or owner of a motor vehicle to maintain financial responsibility does not place an unconstitutional burden on his free exercise of religion.

## FACTS

In January 1988, Lindy D. Cosgrove (Cosgrove) was stopped by a state trooper after his car was spotted on Interstate 90 at a time when the road had been closed by the Governor due to blizzard conditions. The trooper asked Cosgrove to show evidence of financial responsibility pursuant to SDCL 32-35-113 and -114.* Cosgrove stated that he did not have such proof. The officer then cited Cosgrove for failure to maintain financial responsibility. (However, he did not cite Cosgrove for driving on the interstate while it was closed. SDCL 31-4-14.3.)

Cosgrove pled not guilty and appeared pro se at a court trial. At trial, he informed the court that he had a sincerely held religious belief against having insurance. The court found him guilty of the cited offense and fined him $75.00. Cosgrove appeals, arguing that the requirement of the statute amounts to an unconstitutional burden on his free exercise of religion, violating the First Amendment of the United States Constitution and Article VI, § 3 of the South Dakota Constitution. We affirm.

## DECISION

### WHETHER SDCL 32-35-113 VIOLATES COSGROVE'S CONSTITUTIONAL RIGHT TO FREE EXERCISE OF RELIGION.

We first observe that Cosgrove's religious belief appears to be sincerely held. *Thomas v. Review Board*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). His belief stems from the premise that he has insurance with God because God is his Maker and has promised to provide in any situation. As part of his previous employment, Cosgrove was entitled to various unspecified insurance benefits at no cost to him. Rather than accept the free insurance, Cosgrove asked his employer to drop the coverage. His wife likewise had similar unspecified insurance benefits with her employer which she had her employer terminate because of Cosgrove's religious belief.

While we agree that Cosgrove's belief may be sincere, we also note that SDCL 32-35-113 does not force him to purchase

---

* SDCL 32-35-113 provides:

Every driver or owner of a motor vehicle shall at all times maintain in force one of the forms of financial responsibility on the motor vehicle by one of the following methods:

(1) Having in force on the motor vehicle an owner's policy of liability insurance as provided in § 32-35-70;

(2) Having in force a bond as provided in § 32-35-83;

(3) Having a certificate of deposit of money or securities as provided in § 32-35-87, but in the amount of fifty thousand dollars; or

(4) Having a certificate of self-insurance, as provided in §§ 32-35-90 and 32-35-91, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, he will pay the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer.

Failure to maintain financial responsibility is a Class 2 misdemeanor. [A Class 2 misdemeanor carries a maximum penalty of a $100 fine and/or 30 days in jail.]

SDCL 32-35-114 provides:

Every person who drives a motor vehicle, required to be registered in this state, if requested by a law enforcement officer as a secondary action when the driver of the vehicle is detained for a suspected violation of Title 32 or some other offense, shall provide evidence of financial responsibility.

insurance *for his own benefit.* Rather, it requires that the owner or operator of a motor vehicle provide proof of *liability* insurance. It is beyond question that this type of insurance is not intended to protect the insured against injury but rather is intended to protect *others* from the acts of the insured.

The important constitutional underpinnings of this issue require that we apply the strict scrutiny standard to our review. As such, we must determine whether there is a compelling state interest behind the statute and, if so, whether it provides the least restrictive means of achieving that interest. *Thomas, supra; Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

As we noted in *State v. Arnold,* 379 N.W.2d 322 (S.D.1986), South Dakota has a highly legitimate governmental interest in maintaining, protecting, and regulating the public safety. In that case, we found that State's compelling interest extended to the requirement that drivers on South Dakota highways possess a valid driver's license. We also found that this legitimate interest had a secular purpose and was not directed against any religious sect or faith. We held in *Arnold* that the statute requiring licensure was not invalid because of its interference with free exercise simply because of the incidental detrimental effect that it may have had on the adherents of one or more religious views. *Arnold* (citing *Braunfeld v. Brown,* 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), *reh'g denied* 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 (1961).

As required by *Thomas, Sherbert,* and *Arnold, supra,* we must examine SDCL 32–35–113 to ascertain whether it fulfills State's legitimate interest in maintaining, protecting and regulating public safety. The instant statute is clearly designed to protect the public. It requires those with motor vehicles registered in this state and who use such vehicles on public highways to maintain some form of financial responsibility to cover the costs attendant to their causing an accident. Without such a provision, these costs could be borne by the public at large rather than those who are responsible for the damages.

We must next consider whether the statute is the least restrictive means of achieving the state's interest. *Thomas, Sherbert,* and *Arnold, supra.* We note that the statute provides Cosgrove with four options for maintaining financial responsibility. He may either maintain a policy of automobile liability insurance, purchase a surety bond, tender a certificate of deposit for $50,000 to the state treasurer, or obtain a certificate of self-insurance. Only one of those options requires that he carry liability insurance and thus violates his religious precepts. None of the other options impacts his religious belief in any way. Cosgrove correctly notes that the alternative of becoming self-insured is not open to him because it requires that he have a fleet of at least twenty-five vehicles. Regardless, he still has the option of purchasing a surety bond or tendering a certificate of deposit to the state treasurer. These two alternatives for financial responsibility provide Cosgrove an opportunity to stay within the bounds of the statute while maintaining the integrity of his religious belief. We realize that these alternatives are not easy to meet; however, they are viable options which pass constitutional muster. We thus hold that SDCL 32–35–113 does not place an unconstitutional burden on Cosgrove's free exercise of religion. *Thomas, supra.*

Affirmed.

All the Justices concur.